Good morning, Your Honors. Gregory Miller here. May it please the Court, Gregory Miller here for the Appellant Gurney Alfred. Master Sergeant Alfred was employed at the Angola State Prison starting in 2004. He had an exemplary record, no marks against his record until 2010. What happened is in the six year period that he was a victim of racism. So he exercised his rights, he filed a grievance with the department, and he filed just a week later an EEOC claim alleging racial bias and racial harassment. Within six weeks, my client's career was basically over at that point. We're here on an appeal of a motion for summary judgment. As the Court is aware, it has a standard as de novo review. All inferences in light of the non-moving party. Let's look at first the forms that are allegedly falsified by my client. It's clear that what he did was he printed the inmate's signatures. It's all the same handwriting. It goes all the way down. That is what supposedly led to his firing. At the same time, we have another sergeant, Lennon Johnson, who says that's the way we always did it. That's the way I was instructed to do it and that's the way we always did it. But somehow, this suddenly becomes a firing offense for my client. It's quite clear that on the standard that looking at all the evidence in light most favorable to my client, there are plenty of indicators of a retaliatory motive by the department. We have to look at several elements. The temporal element. The temporal element is obvious here because with only a few weeks of filing the grievance and filing the EEOC charge, suddenly these VR1s, violation reports, are filed against my client. Inconsistencies by the defendant. The inconsistencies in this record are just replete. It's kind of astounding when you actually get into the actual facts to see just how borderline inept they were in trying to concoct an additional reason to get rid of my client. We're looking at the dates. We have two violations. One supposedly on the 19th. One on the 20th of July. My client is immediately counseled on the 20th of July. The suspension is lifted at least temporarily by the assistant deputy of the department. This is in August. Some weeks later, supposedly this major violation that constitutes a firing offense magically appears at the secretary's desk because it's taken her two months to go through all these reports. But the very same offense was used against my client's superior, a lieutenant, to counsel him and give him a verbal warning that the conduct was improperly done. All these inferences, all these inconsistencies, there are other inconsistencies in the reports, give my client at least an opportunity to get to a jury trial. That on a summary judgment there is sufficient evidence at least to make the inference for a jury that he was the victim of retaliatory discrimination. On de novo review, the district judge had kind of a difficult task because my predecessor had written a brief that was nearly incomprehensible. And I think the district judge did an admirable job. He even noted that in his ruling. And I have never seen a brief that was so obtuse in all my years of practice. And I used to be a former appellate law clerk. So I've seen plenty of briefs. And I think the judge did an admirable job. But I think what really happened here was the baby got thrown out with the bathwater. Because the key to this case is the retaliation claim. The key to the case is the numerous inconsistencies. Several inconsistencies by the department. They can't keep their storage straight and it's pretty obvious what they did. That certainly should get us to a jury trial to let a jury decide the facts of the case. This is simply a summary judgment. We came forth with enough indicia of retaliatory intent to defeat the summary judgment. All these facts are material. They're relevant. And they're right on point. Again it's a DeNovo standard review. No real deference is given to the trial court's opinion. All the inferences are in favor of my client. And in fact the defendant, the moving parties, I'm sorry the moving parties is given no deference as far as for any credibility calls or anything like that on their part. They've got numerous affidavits saying we did this, we did that. Everything looks hunky dory. But when you look at the actual facts, when you look at the dates, when you look at the signings of the affidavits, of the VR1s, nothing is consistent. Nothing is consistent. And I think any reasonable juror who hears this evidence might in fact conclude that my client was a victim of retaliatory discrimination simply because he filed an aggrievance and an EEOC charge. The timing is just too suspicious. If it was a question of it would happen several months later, well that might be a different story. But we're talking about literally within weeks. I want to make sure I understand you're agreeing that what your client did was a violation of the policy in terms of the way he completed this guard refusal form. We're not agreeing with that. Because simply the other sergeant testified that's exactly how he did it. And we've always done it that way and I was instructed to do it that way. So there was no violation? There was no violation. But the department says it's a violation. But if everyone else does it that way, how does it suddenly become a violation for my client? Not only a violation, but a firing offense because supposedly he falsified or forged these prisoner sign-out forms. All this is is simply a matter of... There was no written policy about how these forms were supposed to be completed? There might have been a written policy, but in fact the department obviously ignored it. They never enforced it until now. They had no testimony that was ever enforced against anyone on these particular circumstances. At best it might have been a matter of don't do that again. Not end this man's career because he was doing exactly what everyone else did. And why all of a sudden out of this pile of forms that are apparently routinely filed by all the other sergeants, does this one get pulled and say, oh, aha, here's a violation against my client, Mr. Albert? We're not agreeing that it's a violation, Your Honor. I'm sorry. What you just told us about that form and how it was filled and what the officers testified, that wasn't what I read in the brief. I'm sorry? I didn't have Johnson testifying that what Mr. Alfred did was the same as we do. I didn't see... Johnson was talking about some other way that others did it. What Johnson said was, the question was, could you not sign a prisoner's name on the Your Refusal form? His answer was, we can print it on there, but we can't really sign his name. We can print it. We can't sign a signature. Well, if you look at the Your Refusal forms that my client was getting terminated over, the names are printed. There's no false signature on there. Every name is printed on the side. And then Mr. Alfred simply signs Gurney and he makes a mark as though he was the officer in charge for all these incidents, all these refusals. How did Alfred... What did he put on the form? Well, what he did was he printed each individual name, exactly as the other sergeant testified you could do. He printed the names alongside. It's all the same handwriting. It's obviously print. There's no indication he was attempting to falsify prisoner's signatures or anything like that. He printed each individual's name and then he just simply signed his name on the right and put a mark through as though he had signed it all the way down the list for each one. But what in fact happens is it's very routine. It's the same guys every day. They're living life in Angola. The ones who regularly want to go out into the yard go out, and the ones who don't want to go out in the yard don't go out. There's no big surprise here. There's no big mystery. It's just a very routine day. Same guys don't want to go out every day. The rest do. So they fill out this yard refusal form. The other sergeant said this is exactly how we did it, and we were told how to do it that way by our supervisor. And his testimony is clear on that. Any other questions by the court? You've saved time for rebuttal. Thank you. Ms. Collier. Good morning, Your Honors. My name is Molly Collier, and I represent the state of Louisiana in this matter. The only issue on appeal here is Mr. Alford's retaliation claim and whether or not the district court properly dismissed it on a motion for summary judgment. I'm going to address three things for you. I'm going to talk about the evidence that was presented at the summary judgment stage. I'm going to talk about the case law very briefly that applies to this case. And then I'm going to address Mr. Alford's arguments very briefly. Before we get into that, I just kind of want to talk a little bit about the yard refusal forms, just to make sure that we're still on the same page and everybody knows what those are. So a yard refusal form at Angola, these offenders who use these yard refusal forms are on extended lockdown. So they're on lockdown for 23 hours a day and then they have one hour of yard time. Well, it potentially violates their constitutional rights if they're not given that one hour of yard time repeatedly. So there are forms, yard refusal forms, that the offenders must sign to show that they refuse their yard. That shows that the officers are not violating their constitutional rights. Now sometimes the offenders get a little cantankerous and maybe they don't want to sign the form. Well, the proper method to show that an offender refused to sign the form is to write the offender's name down, not sign it for him, then write refuse to sign and initial next to it, your initials, to show that the offender refused to sign. That's the proper way to do it. Now let me give... Is there a further requirement to get an additional officer to sign off on it as well? In the record, there is one individual, Lieutenant Brian Myers, who said that that's what he does. It's not necessarily a requirement to have that done, but some officers do that. So let me address the evidence that was presented at the summary judgment stage. Slow down just a little. I'm sorry, Your Honor. I'll try. You do real well and then you hurry and I lose you. I don't want to do that. Okay. Thank you, sir. So the evidence offered at the summary judgment stage, the evidence presented there by the defendant were three particular pieces that go to this retaliation claim. The defendant showed that Mr. Alfred signed the offender's name to the yard refusal forms. And you can look at that. That's in the record. It's page 656 and 657. And you can see that Mr. Alfred signed the offender's names. The other piece of evidence that the defendants offered was that the proper method for signing the yard refusal forms was not followed by Mr. Alfred. The proper method, as I already told y'all, is to write the offender's name in print, which is what Master Sergeant Johnson testified to, and then to write, refuse to sign, an initial showing that the offender refused to sign the form. Was that what Johnson testified? Yes, sir. He testified in his affidavit as to that. He testified in a deposition as to that. The other piece of evidence at the summary judgment stage that the defendant presented was that the only proper discipline for an employee who falsifies documents is termination. There's nothing else that you're supposed to discipline that employee with. You're supposed to terminate them. Now that was what the defendant presented to show a legitimate, non-retaliatory reason for terminating Mr. Alfred. Now, on the other hand, Mr. Alfred didn't offer anything, and he does not deny that he didn't sign those offenders' names. Now, instead, Mr. Alfred contends that it's permissible for him to sign the names, but as discussed, that's not the proper method, and you can look at the forms yourself and see that he didn't fill them out properly. Mr. Alfred didn't offer anything to show that the proper method as set forth by the defendant was improper or that it wasn't right. The other thing that Mr. Alfred did not show at the summary judgment level is he did not show anything. He offered no evidence to rebut the fact that the only proper discipline for falsifying documents is termination. I mean, is this the policy of Angola or State Personnel Board or some equivalent in Louisiana? It's Angola, sir. It's Angola? Yes, sir, and it's because of the nature of the prison, the nature of the business, and if you look at the briefs and whatnot, and if you look at the record, you know, Angola is a prison, and there's potential for violations of constitutional rights. They're sued all the time. The officers are sued by the offenders, and so the officers, when they're filling out the forms, they're creating legal documents, essentially, so they have to do it correctly, and if they lie on the form, they can't work there. They just can't have that sort of thing going on. I guess you gave me a nice, broad answer, but my only question is, what you're telling me is, every time an employee at Angola falsifies a document, they're terminated. Yes, sir. All right, so even if it's a travel document, and somebody says, I went 150 miles, and they only went 100, if it's determined that they falsified that document, they're terminated. It should be, sir. That's the information I have, sir. All right. I don't have anything to the contrary. All right. And if you look at the record, Warden Lamartineer, who is the person who made the decision to terminate, Warden Lamartineer testifies, and he tells about a time that he tried to recommend something less than termination for an employee who falsified documents, and he was told that he couldn't do that. The only proper discipline for falsifying documents is termination. So this was evidence the defendant offered at the summary judgment stage, and this showed a legitimate, non-retaliatory reason. Mr. Alford just didn't offer anything in rebuttal to show that those weren't true. So the district court properly granted summary judgment in favor of the state. Now, of course, summary judgment is appropriate only when there is no genuine issue of material fact, and the mover is entitled to judgment as a matter of law. An issue is genuine when the evidence is sufficient that a reasonable jury might find in favor of the non-moving party. And here, Mr. Alford just didn't offer anything to show where a reasonable jury could find in his favor. He didn't offer anything showing what is the standard for retaliation, that he would have remained employed at Angola had he not filed the grievance. Now, I want to address briefly the case law that applies to this case. Mr. Alford contends that he does not have to show but for causation at the summary judgment stage. Let's don't get into that, counsel, about the law. Okay. We've got problems there. Okay. But you don't have any. Okay. I'm talking to my colleague here. I'll be talking to you. Pardon me. Okay. Is it okay if I discuss the law? We know that it is his burden to prove but for. Okay. Well, just briefly, you know, respectfully, the cases that were cited by Mr. Alford in his brief don't apply to the case we have here at hand. The cases that he cites for the not but for causation standard are all pre-NASA cases, so they just don't apply here. Also, most of those cases are not from the Fifth Circuit, so they're not binding here. Not only that, but most of those cases are actually dealing with ADEA claims, with discrimination, and not with retaliation. So it's not the NASA but for standard, which is applicable here. In the Fifth Circuit, the precedent clearly provides the plaintiff has to show that the adverse action would not have occurred but for a retaliatory motive. Now, to avoid summary judgment in the Fifth Circuit, the standard is that the plaintiff must show that there is a conflict of substantial evidence on the issue of whether the defendant would have taken the action but for the plaintiff's protected activity. And here, again, Mr. Alford just failed to offer any evidence to controvert what the defendant offered at the summary judgment level. Instead, Mr. Alford relies on what he contends to be inconsistent statements, timing, and lack of prior disciplinary actions. I want to address the inconsistent statements argument. Now, my opponent said that there were inconsistencies all throughout the record, and that's just not so. If you take a look at the record, the only inconsistency that he's talking about is something that Captain Lemoine said. There's kind of an inconsistency about whether or not Mr. Alford was actually given the VR-1 on July 19th of 2010 or if he was given the VR-1 for falsifying documents on September 22nd, 2010. And to defeat a motion for summary judgment, what Mr. Alford had to show is there was a conflict of substantial evidence. And quite frankly, regardless of when Mr. Alford was given the VR-1 for falsifying documents, that's not substantial evidence, and there's no conflict of substantial evidence there. That fact just doesn't matter because it doesn't go to anything the defendant offered to show the legitimate non-retaliatory reason. It's just a red herring. Not only that, but Mr. Alford was issued another VR-1, one for failure to follow orders, which was eventually overturned at the department headquarters level. Now, that VR-1 is the one that he was placed on leave for, so he was not at work. He was not at Angola for a time. So how in the world is he supposed to be issued a second VR-1 if he's not there? Also, if you look at the record, if you look at the ruling, you'll see that the district court actually relied on several different affidavits when they were making their ruling, saying that Mr. Alford hadn't met his burden of proof for the retaliation claim. And so the district court was not relying on those supposedly inconsistent statements when they made their determination. As for the timing, it's actually not a few weeks. It's actually a few months in between Mr. Alford filing a grievance and him being issued the VR-1. But the fact of the matter is that an employer cannot have his hands tied to not be able to deal with an employee who commits conduct that's so egregious as falsifying documents, especially in a situation like this with Angola. And for the lack of prior disciplinary actions, again, this is just not a conflict of substantial evidence. The fact of the matter is that it is undisputed that Mr. Alford signed the offender's names on those VR-1, excuse me, on those yard refusal forms. It is undisputed that he did not follow the proper method for filling out those yard refusal forms. And it is undisputed that the only proper discipline for an employee who has falsified documents is termination. And it was for these reasons that the district court dismissed Mr. Alford's retaliation claim. And, Your Honors, it's for these reasons that I ask you today to affirm the district court's ruling. Thank you. All right, thank you, Ms. Collier. Mr. Miller, you say time for rebuttal. The true red herring here is the term falsified documents. There's no falsification here. There's never been a falsification. He simply wrote in, the offenders refused to sign, he simply wrote in their names in print. He didn't attempt to sign every offender's name as though it was a different signature or anything like that. There's no falsification here. Did he put refuse to sign? Pardon me, Your Honor? Did he put refuse to sign? He just, they all refused to sign. That's the whole point of the form is that they're refusing to sign. Otherwise, they wouldn't be on the form. Did he write refuse to sign? I don't believe he did, Your Honor. No. But it's your refusal form. So if the offender's name is on there, he is refusing to sign. Now, whether he should have got an initial, that's another question. That's not what Johnson said. Johnson said you write refuse to sign if you have to print the name. That's a difference. That may be, Your Honor. But that gets back to the issue of where's the falsification? He's being terminated because he falsified documents, not because he did something erroneous, but because he falsified it. Did Mr. Alford sign? He signed his name. He printed their names. It may be, it's not really a question of semantics. It's a question of where's the falsification? Where's the forgery? And certainly, it's an issue, it's disputed enough, a jury should get to decide that issue, whether this is just basically a trumped-up charge. Because they keep saying he falsified, he falsified, he falsified. We're not saying he may not have followed the correct procedure, but the termination offense is falsification. Where's the falsification here? He didn't falsify anything. And as for the but-for standard, it's even in my reply brief. We're never disputing that the standard is but-for. That's the first page of the reply argument. I don't know where that comes from. The only question is, is there sufficient evidence to go forward with the retaliation claim, and then we would, of course, the standard would be but-for. So, once again, and there's also an interesting question about the supervisor. Ms. Collier said that he was suspended. He was not in Angola after his suspension, so how could they issue another VR-1? Well, the real question there is, the suspension was lifted. Why wasn't he back at work? They wouldn't let him back at work. They didn't want him back at work. That was the whole point. They wanted him out. They wanted him out immediately. When the first suspension was lifted, they basically performed a witch hunt to find another reason to get rid of him. It's not a terminable offense. Maybe he should have been reprimanded. Maybe he should have been warned. Obviously, it couldn't have been that serious offense because the lieutenant just got a slap on the wrist. We're not using that as a comparator, but if it was such a firing offense, why did the lieutenant just get a, oh, don't let it happen again? The lieutenant reviewed the form. The lieutenant was disciplined the very next morning. Why does it take until September for all this to get processed? Well, it wouldn't. They could have been processing both VR-1s at the same time. The obvious answer is because when the suspension came through in August, they said, oh, what are we going to do? We've got to find something else. And we're digging through the records, and somebody said, oh, look at how this VR-1 is formed. We'll call it falsification. We'll say it's a firing offense. It simply isn't or it shouldn't be. And the question is, if the department considers it a firing offense, could a jury look at that and say, no, he didn't really falsify anything. He didn't forge anything. He didn't deserve that punishment. This was simply evidence of retaliation. You have to look at the temporal element, the timing, the inconsistencies in the statement, and the whole basis for this matter is where's the falsification? Where's the firing offense? Why all of a sudden after four years, six years of an exemplary record, just within weeks of filing the grievance, weeks of filing the EEOC charge, does all this start coming about? That's really the heart of the matter. And should he get a chance to make these arguments to a jury? The jury may decide against him, but that's not what we're here to decide. All right, thank you, Mr. Miller. Your case is under submission.